**FARMERS INSURANCE EXCHANGE,**
**Plaintiff,**

v.

**Avenal ANDREWS et al., Defendants.**

**MFA INSURANCE COMPANY,**
**Counter-Complainant,**

v.

**FARMERS INSURANCE EXCHANGE,**
**Counter-Defendant.**

**MFA INSURANCE COMPANY,**
**Cross-Complainant,**

v.

**Avenal ANDREWS et al., Cross-Defendants.**

**No. F–72–C–4.**

United States District Court,
W. D. Arkansas,
Fayetteville Division.

July 21, 1972.

**690**

Robert L. Jones, Jr., of Jones, Gilbreath & Jones, Ft. Smith, Ark., for plaintiff.

Joe B. Reed, of Davis & Reed, Springdale, Ark., for Andrews.

Powell Woods, Siloam Springs, Ark., for the Penlands.

H. Franklin Waters, of Crouch, Clair, Cypert & Waters, Springdale, Ark., for MFA Ins. Co.

## OPINION

JOHN E. MILLER, Senior District Judge.

On August 12, 1971, a complaint was filed in the Circuit Court of Benton County, Arkansas, by defendants James F. Penland and wife, Eula Wanda Penland, against defendant Lyle Andrews, seeking to recover the sum of $61,000 for Eula Wanda Penland and $8,700 for James F. Penland for damages which it is alleged they sustained arising out of a collision of a Chevrolet El Camino truck owned by defendant Sherman Foster and driven by Lyle Andrews, with an automobile owned by James F. Penland and driven by his wife, Eula Wanda Penland.

When the suit was filed in the State court and summons issued thereon, the defendant Lyle A. Andrews notified his insurer, Farmers Insurance Exchange (Farmers), who in turn notified defendant MFA Insurance Company (MFA) of the pending suit by letter

dated August 31, 1971, in which Farmers stated:

"Mr. Andrews delivered this lawsuit to our office and in order to prevent default in this matter, Mr. Robert L. Jones, Jr., 412 Merchants National Bank Building, Fort Smith, Arkansas, filed a Special Appearance and Motion to Quash Service with a Memorandum Brief in Support Thereof. Mr. Andrews, at the time of this accident, was driving a vehicle owned by Sherman Foster, and insured for liability coverage through your company.

"We hereby formally tender the defense for this lawsuit to you at this time and request you acknowledge receipt of same. Since our policy would be excess in regard to any verdict rendered in this case, we request that you keep us posted in case it appears that the matter will exceed your policy limits."

Upon receipt of the letter, MFA, through its Regional Claims Manager, on September 3, 1971, acknowledged receipt of the letter and stated:

"We are returning the suit papers on the suit styled, 'James P. Penland and Eula Wanda Penland, vs. Lyle A. Andrews, Benton County Circuit Court, Arkansas, Case # 243–71,' because this company does not provide any coverage for Lyle A. Andrews for this accident."

On January 14, 1972, plaintiff, Farmers, filed its complaint against all the above named defendants for a declaratory judgment. The complaint contains the necessary jurisdictional allegations of diversity of citizenship and the amount in controversy, and jurisdiction is present under 28 U.S.C.A. § 1332.

It is further alleged that prior to August 4, 1971, the defendant MFA issued to defendant Sherman Foster a policy of automobile liability insurance on a 1965 model Chevrolet El Camino pickup truck owned by him. Said policy was in force and effect on August 4, 1971, on which date the truck was being driven by defendant Lyle Andrews with the express or implied permission of the said Sherman Foster at the time when it was involved in a collision with an automobile owned by defendant James F. Penland and driven by his wife, Eula Wanda Penland, on Arkansas State Highway 59 in or near Siloam Springs, Arkansas.

That at the time of the collision, August 4, 1971, Farmers had in effect a policy of automobile liability insurance issued to defendant Avenal Andrews insuring a 1970 model Pontiac sedan, owned by the said Avenal Andrews, which policy provided liability insurance for bodily injury and property damage.

In paragraph No. IV of the complaint, Farmers alleged:

"The definition of the word 'insured' in said policy includes Lyle Andrews, the minor son of the named insured, Avenal Andrews, and also extends coverage to said insured while driving other cars, provided he is driving the non-owned automobile with the permission of its owner. However, such coverage is excess only over any other available coverage on the non-owned automobile, and in this case would be excess over the policy issued by the defendant, MFA Insurance Company, to Sherman Foster on his 1965 model Chevrolet El Camino pickup truck, which was being driven by the said Lyle Andrews at the time of the collision."

Thus the only contention made by Farmers in its complaint is that the liability, if any, of MFA is primary and the liability, if any, of Farmers is excess.

On February 23, 1972, MFA filed its separate answer to the complaint of Farmers, in which it denied certain allegations contained in the complaint, and alleged:

"8. That this defendant, further pleading herein, alleges that if the defendant, Lyle Andrews, was the driver of the vehicle described in plaintiff's complaint, that he was driving said vehicle without the permission of the defendant, Sherman Foster, either ex-

pressed or implied, and that this defendant offered no insurance coverage to the defendant, Lyle Andrews, or any of the other defendants named herein, and is not responsible or liable under the terms of its policy issued to Sherman Foster to defend the cause now pending in the Circuit Court of Benton County, being Case No. 243–71, and is not liable to pay any judgment that might be rendered in favor of the plaintiffs in said action.

"9. That the policy of insurance issued by the plaintiff to Avenal Andrews extends coverage to the defendant, Lyle Andrews, and that the plaintiff herein is the primary carrier and liable for the defense of the action now pending in the Circuit Court of Benton County, Arkansas, and liable to pay any judgment that might be rendered against the defendant, Lyle Andrews, or any other persons."

On February 7, 1972, the defendants Penland filed separate answer to the complaint and a cross-claim against all other defendants, in which they alleged they had no knowledge as to whether MFA had issued a policy of liability insurance to defendant Foster on his pickup truck, and they further stated that "a proper declaratory judgment * * * should be entered in favor of defendant James F. Penland and defendant Eula Wanda Penland against the plaintiff and all of the other defendants."

On February 9, 1972, Lyle Andrews and Avenal Andrews filed separate answers to the complaint, in which each of them admitted all allegations in the complaint except the prayer, and then alleged:

" * * * should it be found that the Defendant, MFA Insurance Company, has no liability under its policy of Insurance, then the plaintiff has the primary obligation and liability for coverage upon its policy of insurance."

On February 16, 1972, Avenal Andrews and Lyle Andrews filed answers to the cross-claim of the defendants Penland.

On February 28, 1972, the separate answer of Sherman Foster and Tim Eubanks to the complaint of Farmers was filed in which they admitted that MFA had issued a policy of automobile liability insurance to Sherman Foster as alleged in the complaint, but they denied all other allegations in the complaint.

On March 1, 1972, MFA filed its answer to the cross-complaint of the defendants Penland. Likewise, Sherman Foster and Tim Eubanks filed answer to the cross-complaint of the Penlands.

On May 5, 1972, with permission of the court, MFA filed a counterclaim against Farmers and a cross-claim against defendants Avenal Andrews, Lyle Andrews, James F. Penland and Eula Wanda Penland, in which it prayed for a judgment declaring the rights, duties and other legal relations between the parties, and that the court hold and declare that MFA has no duty to defend the lawsuit involved herein or any other lawsuit which might be filed as a result of the alleged accident described in the complaint, and has no duty to pay any judgment which might be entered in favor of any of the parties in said lawsuit or any other lawsuit, and further that the court hold and declare that the policy of insurance issued by plaintiff, Farmers, covers said accident and that the plaintiff, Farmers, is required to defend the lawsuit referred to and any other lawsuit filed as a result of the accident and to pay any judgment rendered therein or any judgment rendered in any other lawsuit filed by any of the individuals as a result of the accident.

All parties filed answers to the counterclaim and cross-claim of MFA.

On May 12, 1972, MFA filed its motion for summary judgment in which it alleged:

"1. That the pleadings herein, together with the depositions of Tim Eubanks and Sherman Foster filed in

this matter and the stipulations of parties show that there is no genuine issue as to any material fact, and the defendant, MFA Insurance Company, is entitled to judgment herein as a matter of law pursuant to the provisions of Rule 56 of the Federal Rules of Civil Procedure."

The movant prayed that the complaint of plaintiff be dismissed as to it, and that the court hold that it, MFA, has no insurance coverage applicable to the accident which is the subject matter of the lawsuit, and that it has no duty to defend the state court action or to pay any judgment rendered therein or in any other court, and further decreeing and holding that Farmers is the primary insurance carrier in this matter and liable and responsible for the defense of the action now pending in the Circuit Court of Benton County, Arkansas, and liable to pay and discharge any judgment that might be rendered therein against the defendant Lyle Andrews.

On June 8, 1972, Farmers filed its response to the motion of MFA for summary judgment, and filed motion for summary judgment in its favor. In the motion Farmers alleged:

"That the pleadings filed herein, together with the depositions of Tim Eubanks and Sherman Foster and the stipulation of the parties, show that there is no genuine issue as to any material fact and that the plaintiff, Farmers Insurance Exchange, is entitled to judgment in its favor as a matter of law pursuant to the provisions of Rule 56 of the Federal Rules of Civil Procedure."

Its prayer in the motion was:

" * * * that the court enter summary judgment declaring the rights of the parties under the policies of automobile liability insurance issued by the plaintiff, Farmers Insurance Exchange, and issued by the defendant, MFA Insurance Company, and find and declare that both policies were in full force and effect at the time of the collision which gives rise to the suit now pending in the Circuit Court of Benton County, Arkansas, Case No. 243–71, and that the policy of MFA Insurance Company issued to Sherman Foster is primary and that the policy of Farmers Insurance Exchange issued to Avenal Andrews is excess; that MFA Insurance Company has the primary duty to defend the action now pending in the Circuit Court of Benton County, Arkansas, Case No. 243–71, and to pay and discharge any judgment which may be rendered against Lyle A. Andrews in that action up to the limits of the policy issued by MFA Insurance Company, and for all other proper relief."

On May 5, 1972, the attorneys for Farmers and MFA, by stipulation, filed with the court a copy of each of the insurance policies involved herein.

In the MFA insurance policy which covered the 1965 El Camino truck owned by Sherman Foster, the policy language defining an "insured" person is as follows:

"(a) With respect to the described automobile, (1) the named insured and, if an individual, his spouse, (2) any other person using such automobile with the permission of the named insured or his spouse, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, and (3) any other person or organization but only with respect to his or its liability because of acts or omissions of an insured under (a) (1) or (a) (2) above."

The Farmers Insurance Group policy defines an "insured" with respect to a non-owned automobile as:

"(1) the named insured or a relative, and

(2) * * * provided the actual use of the non-owned automobile by the persons in number (1) * * * above is with the permission of the owner."

On March 23, 1972, the depositions of Tim Eubanks and Sherman Foster were taken at Siloam Springs, Arkansas,

with the following appearances: Mr. Powell Woods, attorney for the Penlands; Mr. H. Franklin Waters, attorney for MFA; and Mr. Robert L. Jones, Jr., attorney for Farmers.

Tim Eubanks is the grandson of Sherman Foster, the owner of the El Camino truck. His father abandoned the family and Tim had lived at various times with his mother in Oklahoma City, but during the last two or more years he had been living with his grandfather and grandmother at Siloam Springs, and was living with them at the time the collision occurred. During the time he lived with his grandfather, he attended high school at Fayetteville, Arkansas. During the summer of 1971 he worked at Youngkin Aviation which rebuilds and repairs private airplanes at the Razorback Airport near Siloam Springs. He earned $1.70 per hour and had worked through June and July and was still working in August on the date of the collision.

Both Sherman Foster and his grandson, Tim Eubanks, testified positively that Eubanks never had the right to drive the El Camino truck without the express permission of his grandfather. He had such permission to drive it to a friend's house on the day that he permitted Lyle Andrews to drive the truck, but was always told to not allow any one to drive the truck.

It is generally held or recognized by the great majority of courts that a second permittee using the automobile solely for his own purposes is not entitled to protection under the omnibus clause where the named insured expressly prohibited the initial permittee from allowing other persons to use or operate the car. See, Annotation, 4 A.L.R.3d 10, p. 61, Sec. C, § 11[a].

In Dodson v. Sisco, (W.D.Ark.1955) 134 F.Supp. 313, the court beginning at page 317 summarized the general rules upon which various decisions on the question of permission to use an insured car are based. Rule 1 therein set forth provides that the original permittee (Eubanks) who has been given permission to use the truck can delegate this authority to the second permittee (Andrews) so as to bring the use of the automobile by that person within the protection of the policy if permission has been expressly given by the named insured to make such delegation. Rule 2 provides that the original permittee who has been given permission to use the automobile but has been expressly forbidden to delegate this authority cannot do so, and the use of the car by the second permittee in violation of the named insured's express order is not within the protection of the policy. See, also, MFA Mutual Ins. Co. v. Mullin, (W.D.Ark.1957) 156 F.Supp. 445; St. Paul Fire & Marine Ins. Co. v. Dean, (W.D.Ark.1970) 308 F.Supp. 1378.

█ Since Eubanks was absolutely prohibited from permitting anyone to drive the truck at any time, the fact that he permitted Lyle Andrews to drive the truck does not bring Andrews within the coverage of the MFA policy.

Mr. Foster testified positively that the truck was not available for use by Eubanks except when there was some necessity for it and which was discussed between them. Eubanks had never let anyone else drive the truck.

There is no genuine issue as to any material fact as to what occurred or as to the permission of Eubanks to drive the truck. He had been positively warned and had always complied with the request of his grandfather not to let anyone drive the truck.

Briefs from Mr. Woods, attorney for the Penlands, and the attorneys for the insurance companies were first submitted. The court, after studying the briefs and the depositions of Eubanks and Foster, observed that Mr. Jones, attorney for Farmers, in his brief made the following statement:

"Farmers Insurance Exchange had in effect a policy of automobile liability insurance on a 1970 model Pontiac issued to Avenal Andrews, mother of Lyle Andrews, which would apply as excess above the MFA policy if there is coverage under both policies. If

there is no coverage under the MFA policy covering the El Camino issued to Sherman Foster, then there is likewise no coverage under the Farmers Insurance Exchange policy issued to Avenal Andrews."

Immediately, on June 12, the court wrote Mr. Woods and called his attention to the above statement of Mr. Jones on behalf of Farmers, and advised Mr. Woods that consideration of the case would be delayed for ten days in order to give him an opportunity, if he so desired, to prepare, serve and submit brief in support of the contentions of his clients. Mr. Woods had not discussed in his original brief the issues raised by Farmers. In accordance with the suggestion Mr. Woods on June 20, 1972, served and submitted a brief in response to the contentions made by Mr. Jones for Farmers, in which he stated:

"If the court should find that the grandfather did not authorize the grandson to lend the car and at the same time found that the grandson did not give Lyle Andrews permission to use that car, then and in that event there would in my opinion be coverage under the plaintiff's policy the same as though no policy on the grandfather's car ever existed. Otherwise all the parties would be punished, except for the insurance company, because of the purchase of insurance by the grandfather."

The court sent a copy of its letter of June 12 addressed to Mr. Woods to Mr. Joe B. Reed, attorney for Avenal and Lyle Andrews, who up to that time had submitted no brief but had filed answer as heretofore stated. Mr. Reed asked permission to be permitted to submit a brief, which the court granted, and on July 10 brief in behalf of Avenal and Lyle Andrews was served and received by the court.

On July 18 the court received letter brief from Mr. Jones, attorney for Farmers, in opposition to the contentions of Avenal and Lyle Andrews, which the court has considered along with the facts and questions raised by the Andrews, who contend that Rule 4 as set forth in Dodson v. Sisco, supra, which provides that the initial permission given by the named insured to the original permittee includes the use of the automobile by the second permittee where in doing so the second permittee serves some purpose, benefit or advantage to the first permittee.

The undisputed facts establish that the use of the truck by Lyle Andrews served no purpose whatsoever of Eubanks. In fact, Eubanks, in his deposition, testified without contradiction as to what occurred at the time he agreed that Lyle Andrews could drive the truck, as follows:

"I told him that I really didn't want him to drive it and I didn't want him to drive, but he said that he might have to go to his house or go home and eat something. I said well, I won't be gone very long, and he said, well, I'll just go to my house, and I said okay. I'll let you just go to your house, and that's it. Don't go driving around in it."

The deposition as well as other evidence establishes that the accident occurred while Andrews was driving around with girls on a route which was nowhere near a direct route from where Eubanks had left the truck to the home of Andrews.

In support of the contentions there was attached to the brief of Mr. Reed an affidavit of Avenal Andrews, but the affidavit in nowise meets the requirements of Rule 56(e), Fed.R.Civ.P. The only statements that she made were based purely upon hearsay or imagination, except the statements in Paragraph 5.

In McSpadden v. Mullins, (8 Cir., 1972) 456 F.2d 428, the court said:

"Affidavits in support of summary judgment must be made on personal knowledge and contain admissible evidence. Fed.R.Civ.P. 56(3); United States v. Dibble, 429 F.2d 598, 602 (9th Cir. 1970); Doza v. American National Insurance Co., 314 F.2d 230,

232 (8th Cir. 1963); Sprague v. Vogt, 150 F.2d 795, 800 (8th Cir. 1945); Walling v. Fairmont Creamery Co., 139 F.2d 318, 322 (8th Cir. 1943); 6 J. Moore, Federal Practice ¶ 56.22 [1], at 2803 (2d ed. 1971). Where an affidavit does not meet this standard, it is subject to a motion to strike."

The second contention made by Avenal Andrews and Lyle Andrews is that if the collision was not covered by the policy issued by MFA to Sherman Foster, then Farmers has waived any rights it may have to deny coverage to Lyle Andrews under the non-owned automobile clause found in its policy. Farmers, on behalf of Lyle Andrews, filed in the action pending in the state court a motion to quash, an answer, an amended answer, and certain answers to interrogatories propounded by the defendant without executing a reservation of rights or non-waiver, and cannot deny coverage under its policy to Lyle Andrews because of the doctrines of waiver and estoppel.

█ The court has examined the proceedings in the state court, and under the provisions of Farmers' policy, it is obligated to defend the suit filed in the state court by the Penlands against Lyle Andrews. The policy provides that "the company shall have the right and duty to defend, at its own expense, any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent."

Farmers has the duty to defend its insured distinct from its duty to pay.

"The great weight of authority, in cases like this and involving the insurer's duty to defend, is that the allegations in the pleadings against the insured determine the insurer's duty to defend. It is not what the insurance company may have gleaned from its outside investigation: it is the allegations made against the insured— however groundless, false, or fraudulent such allegations may be—that determine the duty of the insurer to defend the litigation against its insured." Equity Mutual Insurance Co. v. Southern Ice Co., (1960) 232 Ark. 41, 49, 334 S.W.2d 688, 693.

The question of whether Farmers may successfully defend against the payment of any judgment which may be obtained in the state court is not involved in this case for the reasons heretofore stated, and thus the court does not determine the liability, if any, of Farmers for such judgment. However, the parties may be interested in noting the following at 44 Am.Jur.2d, p. 436, § 1553:

"Although there is some authority to the contrary, the general rule supported by the great preponderance of authority is that if a liability insurer, with knowledge of a ground of forfeiture or noncoverage under the policy, assumes and conducts the defense of an action brought against the insured, without disclaiming liability and giving notice of its reservation of rights, it is thereafter precluded in an action upon the policy from setting up such ground of forfeiture or noncoverage. In other words, the insurer's unconditional defense of an action brought against its insured constitutes a waiver of the terms of the policy and an estoppel of the insurer to assert such grounds."

Also, see Schmidt v. National Auto & Cas. Ins. Co., (8 Cir. 1953) 207 F.2d 301; Western Cas. & Surety Co. v. Independent Ice Co., (1935) 190 Ark. 684, 80 S.W. 2d 626, where the court at page 687 of 190 Ark. and at page 627 of 80 S.W.2d said:

"Moreover appellant assumed the defense of the Anthony case, thereby admitting that the casualty was within the terms of the policy issued by it and waived all defenses it might have had and cannot be heard to say that the policy did not cover the child's injury."

Cf. Aetna Cas. & Surety Co. v. Simpson, (1957) 228 Ark. 157, 306 S.W.2d 117.

The court is convinced that there is no genuine issue as to any material fact in-

volved herein; that MFA has no coverage applicable to the accident herein involved and it has no duty to defend the state court action or to pay any judgment rendered therein or in any other court, and its motion for summary judgment should be granted.

That the cross-claim of defendants Penland against the individual defendants filed February 7, 1972, should be denied and dismissed for lack of jurisdiction.

That the motion of Farmers for summary judgment should be denied and Farmers should continue the defense of Lyle Andrews in the action in the state court.

A judgment in accordance with the above, adjudging costs against Farmers, is being entered today.